SHAW, Justice.
This cause is before us pursuant to the Third District Court of Appeal’s determination that its decision “passes upon questions of great public importance concerning the standards applicable to the award of racing dates in Florida, including the viability and application of the ‘rotation rule’ in making that determination.” Hialeah, Inc. v. Department of Business Regulation, *813 442 So.2d 1120, 1120 (Fla. 3d DCA 1983). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. Although the issue of which track should have been awarded the 1983-84 middle racing dates is now moot, we have granted the petition for review in order to answer the certified question for the district court.
We recently addressed the parties’ annual battle for the favored middle racing dates in Gulfstream Park Racing Association v. Department of Business Regulation, 441 So.2d 627 (Fla.1983) (Gulfstream 1983). In that opinion we expressed having no illusion that our efforts would change the fact of an annual battle. We hope, however, that the present decision will offer sufficient guidance so that a jurisdictional basis for this Court’s involvement in future disputes will seldom arise.
In Gulfstream 1983 we approved the decision of the Third District Court in Gulfstream Park Racing Association v. Department of Business Regulation, 443 So.2d 113 (Fla. 3d DCA 1983), upholding the constitutionality of section 550.081, Florida Statutes (Supp.1980). The case was before us on conflict jurisdiction because the Fourth District Court of Appeal had held the statute to be a standardless, and therefore unconstitutional, delegation of legislative authority to the Florida PariMutuel Commission. Hialeah, Inc. v. Gulfstream Park Racing Association, 428 So.2d 312 (Fla. 4th DCA 1983). We held that the legislature, in enacting chapter ■80-57, Laws of Florida (1980), had adopted the seven criteria for consideration in determining the allocation of racing dates set forth in Hialeah Race Course, Inc. v. Department of Business Regulation, 270 So.2d 366, 369 (Fla.1972) (Hialeah 1972):
(a) The interest of the state;
(b) The interest of the track owner;
(c) The good will;
(d) The quality of the horses;
(e) The track facilities;
(f) Geography; and
(g) Skill in management.
Following this Court’s decision in Gulf-stream 1983, the Commission on December 16, 1983, held a hearing to determine which track should be awarded the 1983-84 middle dates based on the enumerated criteria. The Commission determined that it was Gulfstream. Hialeah then petitioned the Third District Court for a writ of mandamus. The district court treated the petition as an appeal of final agency action and reversed, finding “there has been no demonstration of the ‘strong and compelling reasons’ required to justify a departure from the rule of rotation which we deem to remain a part of the pertinent law of Florida,” Hialeah, 442 So.2d at 1120, citing Justice Ervin’s concurrence in Hialeah 1972 and two district court cases. This holding was a misapplication of law.
As we stated in Gulfstream 1983, 441 So.2d at 629, the Commission is “vested with the nondelegable discretionary power to allocate racing dates The Commission is to exercise its discretion by application of the seven criteria enumerated in Hialeah 1972 and Gulfstream 1983. If the Commission finds that under the criteria the evidence clearly points to the allocation of the middle dates to one particular track, then the Commission will make the obvious award. If, on the other hand, application of the criteria does not point to the award of one track over the other(s), the Commission in fairness should rotate, that is, award the middle dates to the track whose last allocation of the middle dates was most distant in time. It is only when the tracks are in a substantially equal position that the rotation issue arises. We alluded in dicta to the possibility of a rotation system in Justice Ervin’s majority opinion in Gulfstream Park Racing Association v. Division of Pari-Mutuel Wagering, 253 So.2d 429, 431 (Fla.1971). Justice Ervin, in his concurring opinion the following year in Hialeah 1972, explained the function of rotation:
It was implicit from our guidelines [in Gulfstream Park] that if one of the tracks predominated over the other ... the next year’s middle dates (1973) would *814 be given to the predominant track. However, if neither track substantially predominated over the other, the implication was clearly left in our opinion that a rotation of the middle dates in alternate years between the two tracks was in order.
Hialeah 1972, 270 So.2d at 372.
Rotation is not something departed from, but rather something resorted to, after application of the seven factors has failed to result in identification of the proper track to be awarded the middle dates. This is not to say that the legislature could not establish rotation as a rule to be presumptively followed. It is simply that the legislature has not chosen to do so. Therefore the Commission must exercise its discretion according to the standards that we held in Gulfstream 1983 that the legislature implicitly adopted.
The district court should have reviewed the record to determine whether there was competent substantial evidence to support the Commission’s findings of fact. However, expending scarce judicial resources for such a determination now, by either this Court or the district court, would be poor stewardship. It can be predicted that the 1985 middle dates contest will offer ample opportunity for a meaningful review of a Commission award of middle racing dates. We trust we have adequately addressed the district court’s certified question.
The decision of the district court is quashed.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.